UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Eric Vandell Taylor, | Civil No. 12-02011 (DSD/JJG) |
|     Petitioner, | |
| v. | REPORT AND RECOMMENDATION |
| Michelle Smith, Warden, and MCF-Stillwater, | |
|     Respondents. | |

JEANNE J. GRAHAM, United States Magistrate Judge

Petitioner Eric Vandell Taylor brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that his constitutional right to a speedy trial was violated. Respondent Michelle Smith asks the Court to deny the petition on the grounds of non-exhaustion and procedural default and on the merits. For the reasons set forth below, the Court recommends the petition be denied with prejudice.

## I.    BACKGROUND

### A.    Conviction: Factual Allegations

In 2005, Petitioner began a relationship with his girlfriend, A.T., and the two lived together in Minneapolis, Minnesota. *State v. Taylor*, No. A10-1940, 2012 WL 1149323, at *1 (Minn. Ct. App. Apr. 9, 2012), *rev. denied* (Minn. June 27, 2012). In April of 2009, after a fight with Petitioner, A.T. moved to Georgia with her four children, one of whom was Petitioner's infant child. *Id.* A.T. and her children returned to Minnesota in July of 2009 and lived with a friend in St. Paul. *Id.* Petitioner and A.T. resumed their romantic relationship upon her return, and Petitioner would visit the home in St. Paul to spend time with the children. *Id.* Petitioner and

A.T. often disagreed about whether to have more children. Brief for Appellant at 5, *State v. Taylor*, No. A10-1940, 2012 WL 1149323 (Minn. Ct. App. Apr. 9, 2012). Petitioner did not want more children with A.T., while she was open to the possibility. *Id.*

On August 13, 2009, A.T. left three of her children at home with Petitioner while she went to the library with her ten-year-old daughter. *Taylor*, 2012 WL 1149323, at *1. When she came home, A.T. saw Petitioner, covered in sweat, coming out of the bathroom with his clothes disheveled. *Id.* A.T. asked Petitioner what was happening, and Petitioner responded, "It's not what you think." *Id.* Petitioner tried to close the bathroom door behind him, but A.T. made her way into the bathroom where she found her thirteen-year-old daughter, L.P. *Id.* L.P. was only wearing a bra and told A.T., "Dad had sex with me."[1] *Id.* A.T. told L.P. to get dressed but to not wash herself. *Id.*

When A.T. left the bathroom, Petitioner apologized and repeatedly asked if she was going to go call the police. *Id.* Petitioner told A.T. he was retaliating against her because she had taken his child away when she separated from him and moved to Georgia. *Id.* When Petitioner left a few hours later, A.T. called the police. (Resp't's Resp. at 3; ECF No. 8.) L.P. told the police that Petitioner had ejaculated on her face and showed them the towel he used to wipe her face afterward. *Taylor*, 2012 WL 1149323, at *1. When the police transported L.P. to the Midwest Children's Resource Center, physician Alice Swenson interviewed and physically examined L.P. *Id.* In the interview, L.P. told Dr. Swenson that Petitioner forced L.P. to have oral, vaginal, and anal sex with him. *Id.* In the physical examination, Dr. Swenson found a small tear

---

[1] L.P. was not Petitioner's child, but Petitioner was a father-figure to A.T.'s three oldest children. Brief for Resp't at 2, *State v. Taylor*, No. A10-1940, 2012 WL 1149323 (Minn. Ct. App. Apr. 9, 2012).

near L.P.'s anus, which was consistent with L.P.'s account of the assault. *Id.* Swabs of L.P.'s face and the towel each contained L.P.'s DNA and Petitioner's sperm. *Id.*

Police arrested Petitioner one week later. *Id.* Petitioner was charged with two counts of criminal sexual conduct under Minnesota Statute § 609.342, subdivisions 1(b) and (g). *Id.* The first count alleged Petitioner was in a position of authority over L.P., and the second count alleged he had a significant relationship with L.P. *Id.*

In March of 2010, while Petitioner was awaiting trial, L.P. reported additional incidents of sexual abuse by Petitioner. *Id.* at *2. L.P. told her pastor that Petitioner had been sexually assaulting her since January 1, 2009, before A.T. moved her family to Georgia. *Id.* When A.T. learned of this and asked L.P. about it, L.P. said that Petitioner had abused her too many times to count. Brief for Appellant at 8, *Taylor*, 2012 WL 1149323. On May 21, 2010, the charges against Petitioner were expanded to include any sexual assaults between January 1, 2009, and August 13, 2009. *Id.* at 10.

### B. Conviction: Procedural History

Petitioner first demanded a speedy trial on September 9, 2009. *Taylor*, 2012 WL 1149323, at *2. The trial was postponed twice at the State's request. *Id.* The State moved for a continuance in October of 2009 to allow for the preparation of DNA evidence. *Id.* The Bureau of Criminal Apprehension (BCA) had yet to analyze the State's physical evidence because of a laboratory back-up. *Id.* The Ramsey County District Court granted the State's motion for a continuance. *Id.*

The State again moved for a continuance on January 4, 2010. *Id.* The State requested that the trial be moved to May of 2010 because it learned that Dr. Swenson, an essential witness, had gone to New Zealand in November and would not return until April. *Id.* Petitioner opposed the

3

motion and argued that the State had acted negligently. *Id.* Petitioner alleged that a state investigator had known Dr. Swenson was planning to leave the country and never told the county attorney's office. *Id.* Petitioner again moved to dismiss for a speedy trial violation. *Id.* The district court granted the State's motion for a continuance and denied Petitioner's motion to dismiss. *Id.* Due to the length of the delay, the court ordered that Petitioner be put on conditional release from jail. *Id.*

It was during this second delay that L.P. reported the additional incidents of sexual abuse. On May 21, 2010, the State amended the complaint to reflect the additional allegations. *Id.* At that point, the case had been on "on-call status" since May 10, 2010. *Id.* Petitioner moved to dismiss the amendments to the complaint for lack of probable cause and improper venue. *Id.* The district court denied Petitioner's motion. *Id.*

The trial began on May 24, 2010, three days after the complaint was amended. *Id.* L.P. testified that Petitioner sexually penetrated her on August 13, 2009. *Id.* The State also presented the DNA evidence from L.P.'s face and the towel Petitioner used. *Id.* To rebut this evidence, Petitioner testified that he had sex with A.T. on August 13, but since he did not want to have any more children with her, he ejaculated onto her stomach. *Id.* Petitioner claimed that A.T. used the towel to wipe off his semen. *Id.* Petitioner also said that A.T. was upset that he did not want any more children, so an argument ensued. *Id.* After the argument, Petitioner said he left A.T.'s home. *Id.*

The jury convicted Petitioner on the first count of first-degree criminal sexual conduct that alleged Petitioner was in a position of authority over L.P., but found him not guilty on the second count of first-degree criminal sexual conduct that alleged Petitioner had a significant relationship with L.P. *Id.* The jury also unanimously found that Petitioner engaged in more than

4

one form of penetration and that he ejaculated on L.P.'s face during the assault. *Id.* Both of these facts served as aggravating factors for an upward sentencing departure. *Id.* The district court sentenced Petitioner to 360 months in prison. *Id.* Petitioner appealed his conviction to the Minnesota Court of Appeals. *Id.* The court of appeals affirmed the conviction on April 9, 2012. *Id.* at *1. Petitioner then appealed to the Minnesota Supreme Court, which denied further review on June 27, 2012. *Id.*

Petitioner filed the present action for a writ of habeas corpus on August 16, 2012. (ECF No. 1.) He asserted two grounds for federal habeas relief. The first ground alleges a violation of Petitioner's right to a speedy trial under the Sixth Amendment. The second ground alleges a violation of the Due Process Clause of the Fourteenth Amendment, because, according to Petitioner, "[t]he district court failed to instruct the jury that it had to agree on which acts Mr. Taylor committed thereby depriving Mr. Taylor of his right to an [sic] unanimous jury verdict." (*Id.*)

## II. DISCUSSION

### A. Petitioner's Motion to Amend Petition for Writ of Habeas Corpus

On October 9, 2012, Petitioner filed a Motion to Amend Petition for Writ of Habeas Corpus. (ECF No. 10.) In this motion, Petitioner requested to remove his due process ground for the writ. (*Id.*) Petitioner stated he wanted to avoid presenting this Court with a "mixed petition." (*Id.*)

Under 28 U.S.C. § 2254(b)(1)(A), a state prisoner must exhaust all remedies available in the state courts in order to receive federal habeas relief. Given that Petitioner did not object at trial to the jury instruction issue of which he now complains, this portion of the habeas petition could be considered non-exhausted at the state court level. *See, e.g.*, *Toney v. Gammon*, 79 F.3d.

693, 699 (8th Cir. 1996) (citing *Picard v. Connor*, 404 U.S. 270 (1971)). The Supreme Court has held that "mixed petitions" containing both exhausted and non-exhausted claims cannot be entertained on federal habeas review, but rather a prisoner must return to state court to exhaust the claims or amend the habeas petition to contain only exhausted claims. *Rose v. Lundy*, 455 U.S. 509, 510 (1982). Accordingly, this Court recommends that Petitioner's Motion to Amend Petition for Writ of Habeas Corpus be granted, and the Court will proceed only on the speedy trial claim.

### B. Procedural Default

Before a state prisoner may seek federal habeas relief under § 2254, he "must 'fairly present' his federal claims to the state courts." *Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010). The purpose of this requirement is to give state courts the first opportunity to correct errors alleged by state prisoners. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). To satisfy the fair presentation requirement, the prisoner must present the federal nature of his claim to each level of the state courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). When a state has two tiers of appellate review, a petitioner must raise his federal claims to both levels before presenting his claims in a federal habeas petition. *O'Sullivan*, 526 U.S. at 845 (finding procedural default when petitioner raised three federal claims to the state intermediate appellate court but not in his petition for review to the state supreme court).

To fairly present federal claims at the state level, the prisoner must do more than simply outline the underlying facts or "make a general appeal to a constitutional guarantee as broad as due process." *Turnage*, 606 F.3d at 936 (quotations omitted). At a minimum on direct appeal, the prisoner must "explicitly refer[] the state courts to the United States Constitution or federal case law." *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995) (citations omitted). If a state prisoner

6

does not fairly present a federal claim to the state courts, and the claim could no longer be reviewed because of a state procedural rule, the claim is procedurally defaulted. *Turnage*, 606 F.3d at 936.

Petitioner's speedy trial claim is not procedurally defaulted as he fairly presented his federal claim to all levels of the state court. At the trial stage, Petitioner objected multiple times to a violation of his Sixth Amendment right to a speedy trial. In his petition for review to the Minnesota Court of Appeals, Petitioner directed the court to the Sixth Amendment of the United States Constitution, in addition to multiple federal cases detailing the speedy trial provision of the Sixth Amendment. As a result, the Minnesota Court of Appeals considered both the federal constitution and federal case law in its decision. Petitioner also alleged a constitutional speedy trial violation in his petition for review to the Minnesota Supreme Court and relied on federal case law to illustrate his claim. Given that Petitioner fairly presented his speedy trial claim at the district court level and at both levels of appellate review, the Court finds that Petitioner fairly presented this claim to the Minnesota state courts and a review of the merits is appropriate.

### C. Merits of the Speedy Trial Claim

#### 1. Standard of Review

A federal court's review of the state court decisions underlying a state prisoner's habeas petition is "limited and deferential." *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007) (quotation omitted). There are three circumstances in which a federal court may grant a state prisoner's habeas petition: (1) if the state court adjudication was contrary to clearly established federal law, (2) if the state court adjudication involved an unreasonable application of clearly established federal law, or (3) if the state court adjudication was based on an unreasonable evaluation of the facts. *See* 28 U.S.C. § 2254(d).

Regarding the first circumstance, a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The second circumstance is triggered when the state court correctly identifies the governing Supreme Court precedent but unreasonably applies it to the facts at hand or when the state court unreasonably extends or refuses to extend the Court's precedent to a new context. *Id.* at 407. To warrant habeas relief in this circumstance, the state court's misapplication of the law must be "objectively unreasonable." *Id.* at 409. The final circumstance is controlled by § 2254's mandate that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### 2. Analysis

The United States Supreme Court has identified four factors to consider when assessing whether a delay violated a defendant's right to a speedy trial: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). In *Barker*, the Court noted that none of the factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533. Unless a delay was presumptively prejudicial, which depends on the specific circumstances of each case, there is no need to delve into the other three factors. *Id.* at 530-31. With respect to the second factor, the government's attempt to delay trial for tactical reasons is weighed more heavily than an attorney's negligence, an overburdened court system, or a missing witness. *Id.* at 531. In assessing the third factor, a defendant's actual assertion of his speedy trial right is highly

8

relevant to the determination of whether his right was deprived. *Id.* Finally, prejudice should be assessed in light of three interests: the prevention of "oppressive pretrial incarceration," the minimization of the defendant's anxiety and concern, and the ability of the defendant to prepare his case. *Id.* at 532. The last factor is of greatest significance. *Id.*

There was a 257-day delay between Petitioner's first speedy-trial demand and his jury trial. Despite finding that this delay was presumptively prejudicial under Minnesota law, the Minnesota Court of Appeals upheld Petitioner's convictions. *Taylor*, 2012 WL 1149323, at *3 (citing *State v. Friberg*, 435 N.W.2d 509, 512 (Minn. 1989)). Here, we must first determine whether the delay was presumptively prejudicial under clearly established *federal* law.

In order to establish a presumptively prejudicial delay, "an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *United States v. DeGarmo*, 450 F.3d 360, 364-65 (8th Cir. 2006) (quoting *Doggett v. United States*, 505 U.S. 647, 651 (1992)). The amount of time that must pass to create a presumption of prejudice depends on the circumstances of the case. *Barker*, 407 U.S. at 530-31. In *Doggett v. United States*, the Supreme Court remarked that lower courts generally have found presumptive prejudice when a delay approaches one year. 505 U.S. 647, 652 n.1 (1992) (dicta). Given this observation, Petitioner's delay of a little over eight months does not appear to be presumptively prejudicial in order to trigger a speedy trial analysis. In addition, the Eighth Circuit has held that a delay of a little over seven months was "too brief a delay to trigger" Sixth Amendment review. *United States v. McFarland*, 116 F.3d 316, 318 (8th Cir. 1997) (citing *Doggett*, 505 U.S. at 652 n.1).

Even if the delay was presumptively prejudicial, the court of appeals did not unreasonably apply the other three *Barker* factors. The Eighth Circuit has held, "Because the

*Barker* standard is a general, multi-factor standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Taylor v. Roper*, 561 F.3d 859, 863 (8th Cir. 2009) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")).

The Minnesota Court of Appeals found that while "[t]he first three *Barker* factors weigh slightly to moderately in Taylor's favor," his speedy trial rights were not violated "because he was not prejudiced by the delay." *Taylor*, 2012 WL 1149323, at *5. Two of the driving considerations of this "prejudice" factor do not favor Petitioner since he was placed on conditional release five months after his arrest. His pretrial incarceration was not oppressive enough to amount to constitutional prejudice, nor was his accompanying anxiety out of the ordinary. *See United States v. Williams*, 557 F.3d 943, 949 (8th Cir. 2009) (quoting *Morris v. Wyrick*, 516 F.2d 1387, 1391 (8th Cir. 1975) (requiring a defendant to show "the delay weighed particularly heavily on him in specific instances")).

Nor does the final consideration associated with the "prejudice" factor weigh in Petitioner's favor, since his ability to prepare a defense was largely unaffected by the delay. The court of appeals found that despite Petitioner's claim that he was prejudiced by the additional allegations that surfaced during the second delay, Petitioner knew from early April 2010 that the state planned to amend the complaint to reflect these allegations.[2] In addition, as the court of

---

[2] The Minnesota Court of Appeals noted that Petitioner was aware of the State's plan to amend the charges because this plan was included in plea negotiations that took place in April of 2010. *Taylor*, 2012 WL 1149323, at *4.

10

appeals noted, the new charges did not have any effect on Petitioner's sole defense that the victim and her mother were lying. Petitioner relies on the fact that he was not required to demonstrate an affirmative showing of prejudice to succeed on this factor. *See Moore v. Arizona*, 414 U.S. 25, 26-27 (1973) ("Moreover, prejudice to a defendant caused by delay in bringing him to trial is not confined to the possible prejudice to his defense in those proceedings."). However, Petitioner does not identify any other prejudice to which he was subjected, such as interference with liberty, disruption of employment, or depletion of financial resources. *See id.* at 27 (quoting *United States v. Marion*, 404 U.S. 307, 320 (1971)). The Minnesota Court of Appeals did not unreasonably apply *Barker*'s "difficult and sensitive balancing process." *See Barker*, 407 U.S. at 533.

In sum, the Minnesota Court of Appeals' consideration of Petitioner's speedy trial claim was not contrary to clearly established federal law, an unreasonable application of such law, or based on incorrect factual determinations. Thus, Petitioner is not entitled to habeas relief on this claim.

## III. RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Motion to Amend Petition for Writ of Habeas Corpus (ECF No. 10) be **GRANTED**;

2. The Petition for Writ of Habeas Corpus (ECF No. 1) be **DENIED**;

3. This action be **DISMISSED WITH PREJUDICE**; and

4. **JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: April 24, 2013

    s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

## NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **May 14, 2013**. A party may respond to the objections within fourteen (14) days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.